Ansaldo *v.* State Workmen's Insurance Fund et al., Appellants.

Argued October 6, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*S. H. Torchia,* with him *Guy K. Bard,* Attorney General, *John T. J. Brennan,* and *Albert C. Richter,* for appellants.

*Marcus B. Sacks,* with him *Morton S. Freeman,* for appellee.

OPINION BY CUNNINGHAM, J., December 16, 1938:

The insurance carrier in this workmen's compensation case has appealed from a judgment of the court below entered upon an award by the referee, affirmed by the board, of compensation for total disability from April 15 to August 23, 1937, resulting from a double hernia. An examination of the record discloses the appeal is without the slightest merit. The facts, as found by the compensation authorities upon abundant competent evidence, clearly brought this case within the requirements of the "Hernia Amendment" of April 13, 1927, P. L. 186, to the Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS §652, reading:

"Hernia shall be considered as a physical weakness or ailment, which ordinarily develops gradually, and shall not be compensable, unless conclusive proof is offered that the hernia was immediately precipitated by such sudden effort or severe strain that: first, the descent of the hernia immediately followed the cause; second, there was actual pain in the hernial region; third, the above manifestations were of such severity that the same were immediately noticed by the claimant and communicated to the employer, or a repre-

sentative of the employer, within forty-eight hours after the occurrence of the accident."

A summary of the facts, with a few quotations from the testimony establishing them, will show the claimant successfully rebutted the statutory presumption that his hernias developed gradually from a physical weakness or ailment.

He attributed them to a "sudden effort and severe strain" exerted and suffered while operating a machine in a shoe repairing shop in which he was employed as a foreman. His employer thus described the machine and its operation: "Q. What kind of a machine is it? A. Much on the order of a vulcanizing machine. Q. When a man is about to cement a sole of a shoe, as has been described in the hearing here, does it require any effort to use that on the pressure on the bottom of the machine? A. It takes a lot of pressure to lock the levers. As you press them they lock, but it takes a little physical push to shove them down and lock them. ...... Q. Has there been any change in that machine? A. Yes, we have changed the foot-leverage on them. Q. Does that make that easier? A. Yes."

Claimant's description of the circumstances under which he received his injury about 10:00 o'clock in the forenoon of April 7, 1937, reads: "A. That machine is about that high (Referee: He is indicating 4 feet high) and they got two springs on the bottom. You put two shoes, one at a time. When you put a shoe you got to jump on that spring with the foot and got to press hard like this—like a jump. While I done that, putting my foot on the top of the spring and pushed down hard, right away I felt a pain on the side."

Although suffering "actual pain in the hernial region," claimant, who also worked on the "stitcher," continued at work for a few hours until his employer returned to the shop when he immediately communicated to him the fact of his injury and was sent by his employer to Dr. Morris Ginsburg, the claimant's family

physician. It was developed in the testimony that claimant had been operated upon four years previously for a double hernia resulting from a trolley accident. Counsel for appellant attempted to show the prior operation had not been successful and that claimant had frequently complained, during the intervening four years, of pains in the hernial region. This was positively denied by claimant who insisted he had a complete recovery from the former operation. Dr. Ginsburg testified claimant had been a patient of his for four years but had never complained until the evening of April 7, 1937, of pain in that region.

Referring to his examination on that evening, the physician testified he "found a hernia on both sides" and positively expressed his professional opinion that they were recent, "acute," and "recurrent," hernias, "due to the pressure which occurred" in operating the machine. Dr. Ginsburg arranged for claimant's admission to a hospital for the necessary operations. The next morning claimant went to the shop, reported to his employer the diagnosis of Dr. Ginsburg, and left for the hospital where he was confined for seven weeks. By August 23d he was able to, and did, return to work.

No good purpose would be served by a discussion of the cases relative to what constitutes an "injury by an accident" within the general intendment of the statute. The legislature has specifically prescribed what a claimant for compensation for disability resulting from a hernia must prove in order to make his injury compensable. As we have indicated, the evidence for the claimant in this case measured up to each requirement.

Judgment affirmed.